IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 24-257 |
| MOHAMAD HAMAD | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO MODIFY CONDITIONS OF PRETRIAL RELEASE**

AND NOW, comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, and Carolyn J. Bloch and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, and submits the following Opposition to Defendant Mohamad Hamad's Motion to Modify Conditions of Pretrial Release (Doc. No. 67).

The Motion should be denied. The investigation in this case, which continued after Hamad was arrested, has revealed that he is a danger to the community and a flight risk. Hamad has not submitted any new information that would justify removing his home detention. Courts have consistently held that a defendant's compliance with pretrial release conditions is what keeps him out of prison; it is not a basis for eliminating those conditions.

I.   **FACTS**

On October 25, 2024, defendants Mohamad Hamad and Talya Lubit were charged by way of criminal complaint with conspiracy to damage and deface religious real property, in violation of 18 U.S.C. § 371 and damaging and defacing religious real property, in violation of 18 U.S.C. § 247(c), 247(d)(5), and 2. (Doc. No. 2.) Hamad and Lubit were indicted for these charges by a federal grand jury on November 19, 2024. (Doc. No. 35.)

As set forth in the charging documents, on July 29, 2024, Hamad and Lubit spray-painted anti-Zionist[1]/anti-Israel/pro-Palestinian messages on Jewish religious real property. (Doc. No. 2-1; Doc. No. 35.) In addition to the vandalism, the investigation revealed very concerning information about Hamad, including that he had referred to himself as a "Hamas[2] operative" and was seen wearing a Hamas-style headband and a Hamas propaganda sweatshirt, as pictured below.



---

[1] A Zionist is a person who believes in the development and protection of a Jewish nation in what is now Israel.

[2] Harakat al-Muqawama al-Islamiya (Hamas) is the largest and most capable militant group in the Palestinian territories and one of the territories' two major political parties. Hamas emerged in 1987 during the first Palestinian uprising, or intifada, as an outgrowth of the Muslim Brotherhood's Palestinian branch. The group is committed to armed resistance against Israel and the creation of an Islamic Palestinian state in Israel's place. On October 8, 1997, the United States Secretary of State designated Hamas as a foreign terrorist organization under Section 219 of the Immigration and Nationality Act. On October 31, 2001, the Secretary of State also designated Hamas as a Specially Designated Global Terrorist under Executive Order 13224. On Saturday, October 7, 2023, at approximately 6:30 a.m. local time in Israel, Hamas committed its most violent, large-scale terrorist attack to date, sending more than 2,000 armed fighters across the border between the Gaza Strip and southern Israel. The fighters entered Israeli farms and towns and launched a wave of violence focused primarily on civilians. Hundreds of civilians, including Americans, were killed. Others, including Americans, were kidnapped, taken hostage, and brought into the Gaza Strip by the Hamas attackers.



(Doc. No. 2-1; Doc. No. 34.)

The sweatshirt worn by Hamad, which was later found in his residence, bears the image of Abu Obaida carrying a firearm with the text, "RESPECT EXISTENCE OR EXPECT REISTANCE." Obaida is the spokesperson for Hamas's military wing, al-Qassam Brigades.

The investigation also revealed, as set forth in the Complaint Affidavit, that Hamad expressed his desire to travel overseas to engage in violent acts and to die a martyr. In addition, Hamad bought explosive materials and detonated an explosive device on one occasion with another individual, Micaiah Collins (listed as Individual 1 in the Complaint Affidavit). (Doc. No. 2-1.) (The FBI later learned that Hamad also detonated explosives on another occasion, as explained below.) Hamad was a member of the Pennsylvania Air National Guard until September 13, 2024, but he was barred from the facility based on information learned in this investigation.

At the time of Hamad's arrest, the government did not seek detention for Hamad, and he agreed to certain release conditions, including, most importantly, home detention. Since his arrest, the investigation into Hamad's conduct has continued. The government has uncovered additional evidence that strongly indicates that Hamad is a danger to the community and a flight risk.

For example, a review of Hamad's phone and Instagram account has revealed the following. All of this information has been produced to the defense in discovery. On March 13, 2024, Hamad threatened an individual in the comments section of an Instagram post, stating, "I can't wait until the day Muslims k*ill you, I would be so happy, at this point I'm done debating. You are better off to the world not breathing." On June 6, 2024, Hamad posted the following image of himself as a juvenile holding a firearm and stated, "Been toting that K since I was a boy, don't play with me," on his Instagram story.



On this same day, Hamad sent the above image, as well as another image of himself holding another rifle, to Micaiah Collins via Signal, an encrypted messaging application. With the photos, Hamad added, "Been a terrorist since I was a kid in Lebanon, real shit."

On June 27, 2024, Hamad posted an image of himself with a rifle on his Instagram story. An associate messaged Hamad telling him that he was so cool. Hamad responded, "Terrorist mode engaged." Hamad's associate responded, "Helll yeaaahhhhh!!!!!! Threat to US government confirmed."

On July 4, 2024, Hamad shared a video of an apparent Hamas funeral on his

Instagram story. Superimposed on top of the video, Hamad wrote, "Ya Allah, I can't take this anymore, I want to fight and die. I don't want to live here anymore. I'm jealous of these fighters, they got to fight in the way of Allah and have achieved the highest level of Jannah." A screenshot from that video is below:



On July 5, 2024, Hamad messaged a friend, "To be clear I want to go over there in Palestine. And help. Fight." That friend tried to dissuade Hamad from that thinking and stated, "I just don't want to see you be in trouble or under investigation." Hamad responded, "I'll delete my chats."

On July 6, 2024, Hamad shared the following image of a firearm on his Instagram story. On top of the image, Hamad added the text, "Alright yall say a prayer with me. Inshallah one day each bullet in this mag kisses the forehands of the Zionist oppressor, ameen."



Also on July 6, 2024, Hamad shared the following image of a male with a green headband, an apparent Hamas fighter, stating "So you're saying Hamas are the good guys? Yes."



The investigation has also revealed that, on July 18, 2024, Hamad drove from Pittsburgh, Pennsylvania, to State College, Pennsylvania. Hamad brought with him two pipe

bombs and at least one other destructive device made with spray paint cans in his trunk. Hamad manufactured these devices, and he detonated them in State College. Below are images of Hamad placing and lighting one of the pipe bombs.



In or around October 2024, Hamad wrote the following note on his phone, in which he discusses his ability to evade law enforcement surveillance ("I can sneak out"; "I've fucked with their operations way too many times now lmao") and that he would rather "die standing than live kneeling" if law enforcement ever "manage[s] to catch me and lock me up." Notably, he states that he discussed this with "Elyanna," presumably Elyanna Sharbaji, one of the individuals who submitted a letter in support of the removal of Hamad's home detention condition. (Doc. No. 67-4.)

> Hey so I've been thinking, some people have been telling me that I should keep coming out to the protests, (just keep it tame on my end 😅) and I really want to but I want opinions of others too. Elyanna and M both are onboard. I can sneak out successfully and be 100% sure no one is following me as I can tell if I'm being followed very easily, even from far away. Elyanna and M both said me being alone and being isolated is what they want. This would be a form of resistance for me, striking back under their noses. Also it seems like since Sunday's incident, they have completely stopped in person surveillance as I've fucked with their operations way too many times now lmao. But I'm curious as to what others are saying. As I also don't want to make others feel uncomfortable. If there's a possibility they are going to take me down with a federal indictment, I'd rather die standing than live kneeling in fear. If they manage to catch me and lock me up I'd rather do it when I'm standing up for what I believe in rather than getting locked up when I've already went quiet and already fizzled out. But please let me know what you and others are thinking. Thank you 💜

Also, thus far, the investigation has revealed that Hamad, during his Air Force security clearance investigation in 2024, told investigators that he had a Lebanese passport. He later recanted that statement, but it is unclear if Hamad does in fact have a Lebanese passport that is unaccounted for. Hamad has family and friends in Lebanon.

This investigation, including exploring additional charges against Hamad, is ongoing. If the government had been aware of the above information at the time of Hamad's arrest, it likely would have sought pretrial detention.

Hamad's conditions of release include a home detention provision, which provides, "You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer." (Doc. No. 17.)

On March 31, 2025, Hamad filed the instant Motion seeking to remove the home detention condition and replace it with electronic monitoring with a curfew. (Doc. No. 67.) Hamad argues that he has been on home detention for 152 days with no violations and thus has "earned the trust to be permitted to leave his home during a curfew window." (*Id.*) Several of Hamad's friends submitted letters in support of his request. (*Id.*) The letters speak to Hamad's good character but do not provide any new information that could serve as a basis for removal of Hamad's home detention. Rather, Hamad's friends state that they miss hanging out with him, miss their "late-night debates," and wish that they could continue to "share community spaces" with him. (*See id.*)

The Probation Office opposes the Motion. The government understands that, despite being allowed windows for work and school, Hamad is unemployed and is not attending any classes. The government believes that Hamad may be attending a Presbyterian Church on Sundays. Notably, the government believes it is the church associated with the father of Micaiah Collins, who, as noted above, detonated an explosive device with Hamad. If Micaiah Collins has been present at the church, this could be a violation of Hamad's pretrial release condition not to have contact with any person associated with this investigation. Collins was listed in the Compliant Affidavit and Hamad certainly knows that she is connected to this case.

II.     **ARGUMENT**

The Bail Reform Act permits a judicial officer to amend pretrial release conditions. 18 U.S.C. § 3142(c)(3). In considering whether to do so, "the Court considers whether the proposed modifications sought by Defendant would continue to reasonably assure his appearance as required, and reasonably assure the safety of the community." *United States v. Jones*, No. 1:23-CR-00288-RMR-1, 2023 WL 5671662, at *2 (D. Colo. Sept. 1, 2023) (*citing* 18 U.S.C. §

3142(c)); *see also United States v. St. Peter*, No. 2:24-CR-00017-TOR-1, 2024 WL 3167533, at *2 (E.D. Wash. June 25, 2024) ("the Court finds the GPS monitoring condition and the home detention condition to be essential parts of the combination of conditions that in the Court's view provide a reasonable assurance of Defendant's appearance at future court proceedings and a reasonable assurance of the safety of any other person and the community").

Courts have routinely held that "a defendant's compliance with conditions of pretrial release is not new, material information sufficient to reopen a detention hearing or allow a court to proceed to the merits of a petition to modify conditions of pretrial release . . . . [C]omplying with conditions of release is what keeps a defendant out of custody, not a basis for relaxing those conditions." *United States v. Gay*, No. 420CR40026JESJEH, 2020 WL 5983880, at *3 (C.D. Ill. Oct. 7, 2020); *see also United States v. Plasan*, Criminal No. 20-148, Doc No, 37 (W.D. Pa. July 9, 2021) (Bissoon. J.) (denying defendant's motion to remove home detention condition and replace with GPS monitoring); *United States v. Pollard*, No. 20-29, 2023 WL 2044302, at *1 (W.D. Pa. Feb. 16, 2023) ("Judge Conti decided that . . . Mr. Pollard could be released, but only with location monitoring and home detention conditions. There is no error, factual, constitutional, or statutory in Judge Conti's Order setting conditions of release. The Court finds that Mr. Pollard's current conditions of pretrial supervision are appropriate and will not be modified."); *St. Peter*, 2024 WL 3167533, at *2 ("The Court rejects the view . . . that a defendant's mere ability to follow pretrial release conditions means that release conditions should then continually be removed and relaxed over time"); *United States v. Campos-Hernandez*, No. 2:24-CR-00082-TOR-1, 2025 WL 887817, at *2 (E.D. Wash. Mar. 21, 2025) ("Notably, Defendant has not presented any new information in support of her motion beyond the fact of her current compliance with the existing conditions of pretrial release. While it is undisputed that Defendant

appears to have complied with her conditions of pretrial release during the time the home detention condition has been in place, it does not follow that the home detention condition is then somehow unnecessary and superfluous.").

In *Jones*, the district court discussed the defendant's argument that home detention was "isolating," explaining that "Mr. Jones will hopefully take solace in the fact that he is not in pretrial detention and he has a large and supportive family who live locally and who can find ways to assist his home detention to feel less isolating. . . . While Mr. Jones may find the conditions of his release isolating or restrictive, through this adversity he has an opportunity to demonstrate the true content of his character." *Jones*, 2023 WL 5671662, at *2 (internal citations omitted).

In this case, Hamad's only arguments for removing home detention are that he has been compliant with his pretrial release conditions and thus has "earned" it, that his friends miss hanging out with him, and that he feels isolated. These are not reasons to remove his home detention, especially in the face of the evidence detailed above, which shows that Hamad is a danger to the community and a flight risk. He has threatened people; wants bullets to touch the foreheads of Zionists; has expressed his desire to fight and die a martyr; supports Hamas; has called himself a "terrorist" and a "Hamas operative;" has manufactured and tested explosives, including pipe bombs; and has bragged about his ability to evade law enforcement and "sneak out." This is not a defendant who should be removed from home detention. *See St. Peter*, 2024 WL 3167533, at *2 ("the Court views the electronic monitoring condition and the home detention condition as essential pretrial release conditions that impose a minimum burden on Defendant while serving numerous positive supervision functions, to include acting as a reminder to Defendant that she remains on pretrial supervision [and] imposing a check on Defendant's behavior and impulses"); *United States v. Eggleston*, No. 4:24CR00350, 2024 WL 5106710, at *6

(N.D. Ohio Dec. 13, 2024) ("In imposing conditions of pretrial release, this Court must impose 'the least restrictive further condition, or combination of conditions' necessary to 'reasonably assure the appearance of the person as required and the safety of any other person and the community[.]' 18 U.S.C. § 3142(c)(1)(B). Having considered the evidence and proffers presented by both parties, and for the reasons set forth above, the Court finds that the 'least restrictive' conditions necessary to reasonably assure the safety of others and the community continues to include the home detention component of the location monitoring program.").

Regarding Hamad's isolation, that could be combatted by getting a job or going to school. But Hamad has done neither. Contrary to his assertions, Hamad has not "earned" anything; he is fortunate that he is not incarcerated given what the government has uncovered in this case. His home detention condition should not be removed.

For the foregoing reasons, Hamad's Motion should be denied.

Respectfully submitted,

TROY RIVETTI
Acting United States Attorney

By:   */s/ Carolyn J. Bloch*
CAROLYN J. BLOCH
Assistant U.S. Attorney
PA ID No. 53430

*/s/ Nicole Vasquez Schmitt*
NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316