# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 24-257 |
| | * | |
| MOHAMAD HAMAD | * | |
| | * | |

## MOTION TO REVOKE THE MAGISTRATE JUDGE'S DETENTION ORDER AND REQUEST FOR NEW HEARING

Mohamad Hamad ("Mr. Hamad"), through his counsel, Assistant Federal Public Defender Yemi T. Olaiya, respectfully moves this Court to pursuant to 18 U.S.C. § 3145(b) to revoke the Magistrate Judge Patricia L. Dodge's May 1, 2025, detention order and order Mr. Hamad a new hearing to permit counsel to argue for Mr. Hamad's release pursuant to the Bail Reform Act (BRA) and the Fifth Amendment's Due Process Clause. In support of this motion, Mr. Hamad states as follows:

## I.    PROCEDURAL HISTORY

On October 30, 2024, Mr. Hamad was arrested on a criminal complaint charging him with alleged violations of 18 U.S.C. §§ 371, 247(c), 247(d)(5), and 2. On October 30, 2024, Magistrate Judge Kezia O. L. Taylor held Mr. Hamad's Initial Appearance. At that Initial Appearance, Mr. Hamad was released on several conditions.

Almost six months later, on April 22, 2025, a superseding indictment was filed against Mr. Hamad alleging additional violations of 18 U.S.C. § 1001(a)(2) and 26 U.S.C. § 5861(d). The following day the government requested detention on the grounds that Mr. Hamad was a danger to the community and a risk of flight. On May

1, 2025, Magistrate Judge Patricia L. Dodge detained Mr. Hamad citing his release as a danger to the community.[1]

On this Court's de novo review, the Court should find that the government failed to meet its burden of proving that no condition or combination of conditions exist that can ensure the safety of the community if Mr. Hamad is released. That conclusion is particularly apparent here for three reasons. First, Mr. Hamad's family and lifelong community ties to the Western District of Pennsylvania, his alternating academic and employment history, his absence of any criminal convictions, and his worsening medical condition while in custody. Second, Mr. Hamad has shown that he will abide by any court order imposed on him as illustrated through his approximate six-month stay in the community on pretrial release without any violations.

Finally, pursuant to 18 U.S.C. § 3142(f), Mr. Hamad is entitled to a reopening of the detention hearing if this Court finds that there is information that "was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of [Mr. Hamad] as required and the safety of any other person and the community." For these reasons and the additional explanations outlined below, this Court should revoke the Magistrate Judge's detention order and schedule a detention hearing for this matter.

---

[1] Transcript from Detention Hearing attached as Exhibit A.

## II.    LEGAL STANDARD

Section 3145(b) of the Bail Reform Act provides that "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). Additionally, this motion arises under 18 U.S.C. § 3145(b), which provides for de novo review of a magistrate judge's detention order. *See*, e.g., *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (although § 3145 "speaks of 'review' by the district judge, the court may start from scratch"); *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989).

Moreover, as another court in this district has explained, "[w]here a defendant seeks revocation of a magistrate judge's detention order, the district court applies a de novo standard of review." *United States v. McKnight*, No. 2:20-CR-266-5, 2021 WL 615211, at *3 (W.D. Pa. Feb. 17, 2021) (citing *United States v. Delker*, 757 F.2d 1390, 1393–95 (3d Cir. 1985). In doing so, the district court "make[s] an independent determination of the proper pretrial detention or conditions for release." *Id.* (quoting *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992)).

### A. Reopening the Record

18 U.S.C. § 3142(f) permits for the record to be reopened upon new information being presented that was not available to the movant at the time of the original hearing. Two distinct pieces of information now arise that entitle Mr. Hamad to a reopening of the detention record. First, at the time of his detention hearing, Mr. Hamad did not have an available, of-age third-party custodian that was of good

health, had a strong understanding of the English language, and would share his place of residence with him. Such a third-party custodian is now available to Mr. Hamad, which only augments the fact there exists a set of conditions that can be imposed which would reasonably his appearance in court and community safety.

Secondly, Mr. Hamad has a serious medical condition that is only worsening as he remains incarcerated. Where Mr. Hamad is currently incarcerated, there are not sufficient medical resources available to properly diagnose and treat the severe condition that he is facing. With this in mind, it stands to reason that Mr. Hamad can be better treated in the community while still under court supervision as opposed to being subject to the limited and inadequate medical services that are available in pretrial detention.

## B. Danger to the Community

The question of whether Mr. Hamad is a danger to the community centers on whether the government has proved by "'clear and convincing evidence' that no condition or combination of conditions will reasonably assure the safety of any other person and the community." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Brundidge*, No. 3:23-CR-95, 2023 WL 8880395, at *1 (N.D. Fla. Dec. 22, 2023).

When considering the risk of either nonappearance or danger to the community, courts recognize that "those risks need not be mitigated completely." *United States v. Runsdorf*, No. 22-8015, 2022 WL 303548, at *3 (S.D. Fla. Jan. 24, 2022); *see also*

- 4 -

*United States v. Buford*, No. 22-CR-80060, 2022 WL 1631673, at *3 (S.D. Fla. May 10, 2022) ("A defendant is entitled to be released even if there is a residual—but not unreasonable—risk of non-appearance or danger to the community"). That is so because "[g]iven the choice, at the margin, of releasing a dangerous person or detaining a non-dangerous one, **Congress chose the former**." *Runsdorf*, 2022 WL 303548, at *3 (emphasis added).

### C. Flight and Nonappearance

"In the bail context, nonappearance refers to an attempt to avoid submitting to a court's jurisdiction[.]" *United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023). As another court has pointed out, "[a] flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of the evidence." *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8 (M.D. Tenn. May 27, 2021).

## III.   ARGUMENT

At the detention hearing, Mr. Hamad submitted exhibits which evidenced his good character, community and family ties, and his compliance with court directives as well as his prior conditions of release. Therefore, the Court must order Mr. Hamad's release unless it determines that no condition or combination of conditions will "reasonably assure" the safety of other persons or the community. In making this decision, the Court considers:

(1)    The "nature and circumstances" of the offense charged;

(2)    The "weight of the evidence" against Mr. Hamad;

(3)    Mr. Hamad's personal "history and characteristics;" and

- 5 -

(4)    The "nature and seriousness of the danger" to any person or the community that would be posed by Mr. Hamad's release.

18 .S.C. § 3142(g)(1)–(4).

## A. Mr. Hamad's family and community ties and other personal characteristics weigh in favor of release.

Mr. Hamad has significant ties to the community as he is from the Western District of Pennsylvania, with his entire immediate family living in the area as well. To that end, Mr. Hamad's family history is one of the most compelling reasons for his release on bond. In addition to his family ties, Mr. Hamad also has a strong support system within the Greater Pittsburgh Area. At the detention hearing, Mr. Hamad presented letters from community members detailing his good character and ways in which they would be willing to offer their support if he were released.

## B. Many Conditions of Release Have Been Proven to Effectively Manage Ordinary Risk of Flight or Nonappearance.

If the Court somehow finds that the government met its burden of establishing serious risk of flight, Mr. Hamad must nevertheless be released because there are conditions of release that will "reasonably assure" his appearance. Any concerns the Court may have about local nonappearance can be allayed by imposing any number of conditions of release that have been shown empirically to reduce the risk of nonappearance as well as manifestly through the success demonstrated by Mr. Hamad while he was on pretrial release.

Take for example, a study conducted in New York state courts found that text message reminders were able to reduce failures to appear by up to 26%, translating

to 3,700 fewer arrest warrants per year.[2] Holistic pre-trial services focused on providing social services and *support* to clients also reduce the risk of non-appearance across all risk levels in state systems.[3] Beyond the traditional role of Pretrial Services, this could include providing funding for transportation to court, providing childcare on court dates, and assisting clients in finding stable housing, employment or education.[4] Moreover, scholars and courts agree that electronic monitoring is especially effective at reducing risk of flight, although it is also particularly constricting of liberty, and consequently may only be imposed under the BRA if it is the *least* restrictive condition necessary to "reasonably assure" appearance and community safety.[5]

---

[2] *See* Brice Cooke et al, *Text Message Reminders Decreased Failure to Appear in Court in New York City*, Abdul Latif Poverty Action Lab (2017), archived at https://perma.cc/JCW7-JVZW.

[3] *See generally* Christopher Lowenkamp and Marie VanNostrand, *Exploring the Impact of Supervision on Pretrial Outcomes*, John and Laura Arnold Foundation, Special Report (2013), archived at https://perma.cc/R3F3-KZ76.

[4] *See generally* John Clark, *The Role of Traditional Pretrial Diversion in the Age of Specialty Treatment Courts: Expanding the Range of Problem-Solving Options at the Pretrial Stage*, Pretrial Justice Institute (2007), archived at https://perma.cc/5C8C-7HJK.

[5] *See, e.g.*, Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*, 123 Yale L. J. 1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he question of finding other ways of ensuring a non-dangerous defendant's presence at trial is one not of ability, but of will. . . ."); *id.* at 1368–74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the defendant and the government); *United States v. O'Brien*, 895 F.2d 810, 814–16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone [] arguably rebuts the presumption of flight"). *But see also* Siegler, *supra* note **Error! Bookmark not defined.**, at 185 (finding through interviews with stakeholders that electronic monitoring is overused despite the possibility of less punitive alternatives and can impose a "high pecuniary burden for arrestees").

Specific to this case, the conditions of a third-party custodian, acquisition and maintenance of lawful employment, abiding by random check-ins by pretrial services, and home detention would be more than adequate to reasonable assure Mr. Hamad's appearance in court and community safety.

**C. Statistics Showing that It Is Extraordinarily Rare for Defendants on Bond to Flee or Recidivate Further Demonstrate that [CLIENT] Does Not Pose a Serious Risk of Flight**.

The government's own data prove that judges can release more people without risking higher rates of crime and flight. In this case, this Court should be guided by AO statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new crimes on bond. Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates. Even in districts that release two-thirds of all federal defendants on bond, just 1% fail to appear in court and 1% are rearrested while released. The below chart reflects shows the same vanishingly low failure to appear and rearrest rates based on AO data spanning 2007 to 2021.



**Figure 4:** Even When Release Rates Increase, Arrestees Almost Never Flee or Recidivate.

In addition, as the federal Probation and Pretrial Services Office recently highlighted, release rates rose slightly during the pandemic but failure-to-appear and rearrest rates did not increase. Release rates increased from 25% in 2019 to 36% in 2021 but "the rates at which people on pretrial release failed to appear in court or were rearrested remained extremely low."

As such, Mr. Hamad must be released, because the government has not presented sufficient evidence that shows that he would be among the approximately 1% of defendants who fail to appear in court or are rearrested on bond, let alone that there is "a serious risk that the defendant intentionally will avoid court proceedings."

*White*, 2021 WL 2155441, at *7. Detaining Mr. Hamad without sufficient evidence that he poses a "serious risk" of flight violates their constitutionally protected liberty interest.

## IV.    CONCLUSION

Mr. Hamad is more than the allegations he faces. He is a son, a brother, a friend, and a beloved member of the community. He deserves a chance to further demonstrate his ability to comply with comprehensive release conditions short of incarceration, especially considering that he was in the community abiding by release conditions for almost six months leading up to his most recent arrest. Since there are conditions which can be imposed to reasonably assure the safety of the community and because pretrial release is meant to be the lawful norm, Mr. Hamad asks this Court to revoke the Magistrate Judge's detention order and set a detention hearing in this matter.

Respectfully submitted:

*/s/ Yemi T. Olaiya*
Yemi T. Olaiya
Assistant   Federal   Public   Defender